

# NUMBER 13-08-00044-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SIGIFREDO FLORES,                              **Appellant,**

**v.**

THE STATE OF TEXAS,                           **Appellee.**

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Hill
### Memorandum Opinion by Justice Hill[1]

Appellant, Sigifredo Flores, appeals his convictions by a jury of three counts of

indecency with a child by contact, and ten counts of sexual assault. *See* TEX. PENAL CODE

---

[1] Retired Second Court of Appeals Justice John G. Hill assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

ANN. §§ 21.11(a)(1) (Vernon 2003); 22.011(a)(1) (Vernon Supp. 2008). The jury assessed his punishment for each of the counts of indecency with a child by contact at twelve years' imprisonment, and a fine of $10,000, and assessed his punishment for each count of sexual assault at ten years' imprisonment, and a fine of $10,000. The trial court ordered that Flores's convictions for indecency with a child by contact be served consecutively. The imposition of the sentences imposed for sexual assault was suspended, and Flores was placed on community supervision for ten years.

In five issues Flores contends that: (1) the evidence is legally insufficient to support his convictions; (2) the evidence is factually insufficient to support his convictions; (3) the trial court erred by stacking the sentences; (4) the trial court erred in allowing the testimony of an expert witness whose name was not disclosed to the defense during discovery; and (5) the trial court committed reversible error by allowing impermissible jury argument by the State. We modify the judgment to reflect that Flores's sentences for his convictions for indecency with a child are to be served concurrently, and we affirm the judgment as modified.

## I. BACKGROUND

Flores, a licensed professional counselor, was charged by indictment with five counts of indecency with a child by contact, two counts of attempted sexual assault, and seventeen counts of sexual assault. Flores pleaded not guilty to all counts and proceeded to a trial by jury.

### A. J.H.'s Testimony

J.H., age thirty-three at the time of trial, indicated that he was in his early twenties when he started seeing Flores. J.H. testified that his aunt recommended Flores to him after he told her about disturbing dreams that he was having. When he began seeing

2

Flores, J.H. "had a lot of anger" and "insecurities" and was trying to make it as a musician. J.H. testified that Flores, who was also counseling his aunt and his sister, told J.H. that he was "special" and "not like them," indicating that J.H. was more artistic and sensitive to things around him. J.H. saw Flores, who was in his forties at that time, as a mentor or father figure. J.H. testified that Flores told him he was going to take him on a spiritual journey, and that there were advanced supernatural beings that one could talk to. After a while, J.H. discontinued the sessions, but later started them again.

J.H. testified that after a period of time, Flores told J.H that J.H. had to have sex with Flores's wife to "get to the next level" by doing something that would "open it and release it." When asked if he wanted to have sex with Flores's wife, J.H. said it was complicated because it was one thing to have sex with a woman by yourself, and another thing having your mentor looking over you to see how you perform. He related that Flores told him that his job was to please Flores's wife. J.H. indicated that at some points during counseling, Flores was naked. J.H. said that he had sex with Flores's wife in Hidalgo County, Texas.

J.H. testified that he was seeing Flores for help. He indicated that he would never, on his own, have had sex with Flores's wife. J.H. testified that he did not voluntarily consent to having sex with Flores's wife; instead, he succumbed to the situation because he felt like he owed Flores something. J.H. testified that he put his penis to her mouth and his mouth on her sexual organ. J.H. related that he also had vaginal sex with Flores's wife; afterward, Flores would have sex with her.

J.H. testified concerning an incident where Flores left him and his wife alone together. Flores came back drunk and carrying a gun which he held up to his own head. On that occasion, for the first time, Flores joined J.H. and Flores's wife in sex. J.H. stated that Flores told him to "go down on him." When J.H. refused, Flores grabbed J.H.'s head

3

and told him, "do it or you'll know what's good for you." J.H. complied. Then Flores kissed him on the lips, put his finger up J.H.'s anus, and attempted to "go down" on J.H. Flores tried to insert his sexual organ into J.H.'s anus, but was unable to because Flores's penis was not fully erect. J.H. testified that none of these acts were performed with his consent. He indicated that all of this contact occurred in Hidalgo County, Texas, about the year 2000.

J.H. said that on another occasion, Flores told him that there was a "demon" or "spirit" that wanted him sexually. He testified that on that occasion, Flores's penis penetrated his anus. J.H. indicated that he did not want to do it, but that he succumbed to Flores's will. At that point, J.H. began to question Flores's leadership and mentoring. J.H. quit seeing Flores because J.H. "couldn't take it anymore."

On cross-examination, J.H. acknowledged that he had told one of Flores's relatives that he had sex with Flores's wife. He indicated that he may or may not have paid Flores forty dollars at the beginning for counseling, but admitted that he had no proof of payment, and that he had never told an investigator that he paid for any session. J.H. also acknowledged that he did not report any of this activity for five years, at which time he reported it to "the licensing board."

**B.     A.A.'s Testimony**

A. A., age 27, testified that when she was fourteen, she saw Flores for counseling. She recalled one occasion during which Flores had her lay on the couch so that he could do some "healing." She said he touched her bra but did not put his hand under it. She indicated that as the months went by, Flores got closer to her. She also mentioned that the lighting in the main office was dim. She stated that this happened in Hidalgo County,

4

Texas. She acknowledged that she had not made any affidavits concerning this conduct for over ten years. She also acknowledged that she had used marijuana, cocaine, and heroin, but not until several years after this occasion. Outside the presence of the jury, it was stipulated that this witness was not the spouse of Flores, and, also outside of the jury's presence, Flores testified that he had not ever been married to her.

## C.    L.R.'s Testimony

L.R. testified that she saw Flores for counseling when she was sixteen. She said that during a session, Flores touched her bare breast and nipples. She indicated that this happened about two or three times. She stated Flores told her she needed this treatment so that she could "lose her fears" and "be . . . accepting of being touched." Flores told L.R. that, because nobody would understand that she needed this treatment, she should not say anything. L.R. followed that instruction. Additionally, Flores told L.R. that she would eventually "get naked" with him present. She said that all of these incidents occurred in Hidalgo County, Texas.

On cross-examination, L.R. acknowledged that she did not report these matters to either the police or her parents for a number of years, until encouraged to do so by her cousin, J.H. L.R. clarified her earlier testimony by stating that Flores touched her breast on two occasions.

## D.    S.B.'s Testimony

S.B. testified that while working at Allied Rehab, she began having therapy sessions with Flores. In July 1999, she had oral and vaginal sex with Flores on several occasions. Flores told S.B. that he had special powers: he could do things through dreams and make

5

things happen. On direct examination by the State, S.B. testified that Flores took advantage of her because of problems she was having in her marriage. On cross-examination, S.B. testified that she consented to the oral and vaginal sex. However, on redirect examination, S.B. testified that she did not voluntarily consent to either the oral or vaginal sex. On recross-examination, S.B. was unable to give specific details about the incidents of oral and vaginal sex.

**D.    Dr. Pina's Testimony**

Dr. Gregorio Pina III testified that he is a licensed psychologist and sex-offender treatment provider, with a doctor of psychology degree. He stated that it is not appropriate for a counselor to have a sexual relationship with a patient. He indicated that if a counselor fails to set limits, and the patient starts to develop a very close relationship, the patient can lose his free will, but some patients will stop the treatment.

Flores was convicted of one count of indecency with a child by touching L.R.'s breast and another count of indecency with a child by touching the breast of A. A. He was also convicted of one count of sexual assault by penetrating the mouth of J.H., and three counts of sexual assault by penetrating the anus of J.H. Finally, he was convicted of four counts of sexual assault by penetrating the mouth of S.B. and two counts of sexual assault by penetrating the sexual organ of S.B.

## II. LEGAL AND FACTUAL SUFFICIENCY

In his first and second issues, Flores contends that the evidence is legally and factually insufficient to support his convictions.

**A.    Standard of Review**

6

In conducting a legal sufficiency review, a reviewing court must ask whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—not whether '*it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis in original)). We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151. We must resolve any inconsistencies in the evidence in favor of the judgment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In conducting a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or the jury's verdict is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We will not reverse the jury's verdict unless we can say with some objective basis in the record that the great weight and preponderance of the evidence contradicts the verdict. *Id.* at 417.

B.    **Analysis**

Flores first contends that the evidence is insufficient to show that he touched the breasts of A. A. or L. R. with the intent to arouse or gratify his sexual desire. With respect to A. A., Flores asserts that he did not make skin-to-skin contact with her breast, and that A. A. did not say that Flores was aroused. Texas Penal Code section 21.11(c)(1)

specifically provides that improper touching includes touching through clothing. TEX. PENAL CODE ANN. § 21.11(c)(1) (Vernon 2003). Flores cites us to no case requiring evidence of the complainant saying that the defendant was aroused, and we are not aware of any.

With respect to deficiencies as to L.R., Flores erroneously states that the indictment alleges that he touched her on two occasions outside her clothing. In fact, the indictment in those counts only alleges that Flores touched L.R.'s breast, not that he touched her breast outside her clothing. L.R. testified that Flores said the reason for the touching was that she had "issues of trust." L.R. testified that Flores touched her on her bare breast and discouraged her from telling anyone what was going on. Additionally, Flores's goal with L.R. was to have her naked in his presence.

Viewing this evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Flores committed the offense of indecency with a child with respect to A.A. and L.R. *See Laster*, 275 S.W.3d at 518. Viewing the evidence in a neutral light, we cannot conclude that the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or that the jury's verdict is against the great weight and preponderance of the evidence. *Watson*, 204 S.W.3d at 414-15. We conclude that the evidence is legally and factually sufficient to support Flores's convictions for indecency with a child with A. A. and L. R.

With respect to J.H., Flores argues that the evidence is insufficient to show that J.H. did not consent to the behavior for which Flores is charged. However, the allegation is not that J.H. lacked consent, but rather that Flores, as J.H.'s licensed professional counselor, caused him to submit or participate in the alleged acts exploiting J.H.'s emotional

8

dependency on him. With respect to S.B., Flores makes the same argument concerning consent. Flores correctly points out that S.B. could not recall the details of the oral and vaginal sexual encounters that she had with Flores while she was his patient. However, as noted with respect to J.H., consent was not an issue; rather, the issue was whether Flores caused S.B. to submit or participate in the alleged acts by exploiting her emotional dependency on him. S.B. testified that Flores had oral and vaginal sex with her on more than one occasion. Flores cites us to no case holding that the failure to remember all the details of such conduct renders the evidence insufficient, and we are not aware of any. We hold that a rational trier of fact could have found beyond a reasonable doubt that Flores committed sexual assault against J.H. and S.B. *See Laster*, 275 S.W.3d at 518.

Viewing the evidence in a neutral light, even considering S.B.'s waffling testimony regarding the voluntariness of the acts, the jury's verdict is not clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence. *Watson*, 204 S.W.3d at 414-15. We conclude that the evidence is legally and factually sufficient to support Flores's convictions for sexual assault as to J.H. and S.B. We overrule issues one and two.

### III. SENTENCE STACKING

By his third issue, Flores contends that the trial court erred by stacking his sentences for indecency with a child by contact. Since September 1, 1997, Texas Penal Code section 3.03(b) has authorized stacking sentences for indecency with a child by contact. *See* TEX. PENAL CODE ANN. § 3.03(b) (Vernon Supp. 2008); *id.* § 21.11(a)(1). The State, in the interest of justice, has disclosed to us that because the offenses that resulted

9

in stacked sentences occurred prior to September 1, 1997, we should sustain this issue and modify the trial court's orders as to Flores's convictions for indecency with a child by contact to reflect that the sentences are to be served concurrently. *See Yerbio v. State*, 87 S.W.3d 193, 195-96 (Tex. App.–Texarkana 2002, pet. ref'd). We therefore sustain point three and modify the judgment accordingly.

## IV. EXPERT TESTIMONY

In his fourth issue, Flores contends that the trial court erred by allowing the testimony of an expert witness, Dr. Pina, because his name was not disclosed to the defense during discovery. On January 9, 2007, Flores filed motions asking the trial court to order the State to list all of the witnesses that it in good faith expected to use at trial. However, Flores does not refer us to any order of the trial court directing the State's attorney to list its witnesses, nor does Flores refer us to any record indicating when he first learned that Dr. Pina was to be a witness. We must overrule such an objection where there is no order by the court for the State to disclose the names of its expert witnesses. *Badillo v. State*, 255 S.W.3d 125, 130 (Tex. App.–San Antonio 2008, no pet.). We therefore overrule issue four.

## V. JURY ARGUMENT

In his fifth issue, Flores asserts that the trial court committed reversible error by allowing impermissible jury argument by the State. After stating that situations such as those presented at trial are devastating events for the victims—events that the victims consciously and subconsciously work to forget—counsel for the State argued,

If you recall what Doctor Pina told you about that. Do you remember also

10

that Doctor Pina gave you the iceberg example. That the tip of the iceberg is what people report and what people [talk] about it. Here is the iceberg and here is the water and this is what we don't know about. And it is not unusual for victims of these sorts of offenses to not report what is going on.

Counsel for Flores objected, saying, "Your Honor, I'm going to object to that. She is talking about–[.]" The trial court interrupted counsel in order to sustain the objection. The trial court then admonished the jury as follows, "The jury will consider only the evidence you heard that was presented here. If you heard it—what you heard you can make whatever facts you want of that evidence but don't guess, don't surmise, don't believe, don't think and don't assume. Let's continue." Counsel for Flores did not object to the court's instruction or request additional instruction, but did ask for a mistrial. The trial court denied Flores's request for a mistrial.

Jury argument is proper if it falls within one of four categories: (1) summation of the evidence presented at trial; (2) reasonable deduction drawn from that evidence; (3) answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). Dr. Pina gave the following testimony at trial:

Q.   Okay. What about—is this something that a victim would normally want to report or make known?

A.   We find the opposite. In fact, victims do not like to report sexual abuse. And we so [sic] it this way. Off the tip of the iceberg—so if you drop an ice cube in a glass and only the tip of it comes out, the majority of people do not report—children or elderly do not report sexual abuse because you're going to get shamed publicly. So most people just swallow it up and push it out of the way.

We find the argument by the State to be proper because it was a summation of the evidence presented at the trial. *See id.* Even if it was not, the trial court instructed the jury

11

that it was only to consider the evidence presented at trial. We hold that the trial court's instruction was prompt and sufficient to cure any error. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999).

Flores also complains of an argument by the State's attorney that, "For the record, Beth [co-counsel for the State]—neither Beth nor I have any doubts. We don't have any doubts. We're prosecuting that man for these crimes." In complaining of the argument, Flores does not include the preceding portion of the argument, in which the attorney for the State said, "[Defense counsel] tells you, I have doubts. I have doubts." Previously, defense counsel had argued, "Doubt? Boy, I'm reeling from the doubt. Reasonable? Hey, I'm a reasonable person. . . . I have a doubt here." We hold that the State's argument was proper because it was a reasonable response to the argument by Flores's counsel. *See Jackson*, 17 S.W.3d at154. We overrule issue five.

## VI. Conclusion

We modify the judgment to reflect that Flores's sentences for his convictions for indecency with a child are to be served concurrently, and we affirm the judgment as modified.

JOHN G. HILL
Justice

Do Not Publish. Tex. R. App. P. 47.2(b)
Memorandum Opinion delivered and
filed this the 27th day of August, 2009.

12