Petros YEBIO, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–01–00163–CR.

Court of Appeals of Texas, Texarkana.

Submitted May 31, 2002.

Decided Aug. 23, 2002.

---

---

Frances M. Northcutt, Houston, for appellant.

Carol M. Cameron, Asst. Dist. Atty., William J. Delmore III, Harris County Asst. Dist. Atty., Houston, for appellee.

Before GRANT, ROSS and CORNELIUS,* JJ.

## OPINION

WILLIAM J. CORNELIUS, Justice (Retired).

Petros Yebio was convicted by a jury of aggravated sexual assault of a child. He was charged with two offenses allegedly occurring on the same day and involving the same victim, W.A. Both cases were tried together. The jury convicted Yebio in both cases and set his punishment at seven years' confinement on each charge. At sentencing, the trial court ordered that the sentences be served consecutively.

The State produced evidence that Yebio, while living with relatives, repeatedly sexually abused their young daughter, W.A., over a period of more than two years. Yebio does not attack the sufficiency of the evidence to support his conviction.

Yebio first contends the trial court erred by ordering his sentences to run consecutively rather than concurrently. If multiple cases arising out of a single criminal episode are tried together, the court must order the sentences to run concurrently. TEX. PEN.CODE ANN. § 3.03 (Vernon Supp. 2002). However, an exception to that rule was enacted by the Legislature effective September 1, 1997; the exception provides that, if the defendant commits certain specified crimes, the court may direct the sentences to run either concurrently or consecutively. The exception, however, does not apply to offenses committed before September 1, 1997. Act of June 13, 1997, 75th Leg., R.S., ch. 667, § 7(a), 1997 Tex. Gen. Laws 2250, 2252. Therefore, whether the trial court had the discretion to order Yebio's sentences to run concurrently depends on whether the offenses occurred before September 1, 1997. The indictments alleged that the offenses occurred on or about September 5, 1997. If the evidence shows they occurred after September 1, 1997, the trial court acted within its authority by ordering the sentences to run consecutively.

W.A. testified in response to a question about when the last assault occurred that, "All I know is that it was the summer of the beginning of fourth grade. That was like when it stopped. So I guess I was like around 8 or 9." When questioned more carefully about the time of the assaults, she testified that they occurred during two summers and that they started the summer before third grade and ended before fourth grade. Janice Lanford, a schoolteacher who testified for the State, testified that W.A. told her the assaults had been occurring since she was about four years old and lasted for as long as Yebio had lived in her parents' house.

W.A. made her outcry in September 1998, while she was in the fifth grade. Thus, her fourth grade school year began in the summer or fall of 1997.

---

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

W.A. testified that the sexual abuse regularly occurred between noon and two o'clock p.m. while she was home from school and her parents were away at work. She told Lanford that the abuse occurred mostly in the summer when her parents were working and she was off from school. There was also testimony that W.A.'s parents let Yebio "take care" of W.A. when she was home from school and they were at work. We believe this evidence is sufficient circumstantial evidence to show that the last abuse of W.A. occurred before September of 1997. The State thus proved only that the abuse occurred before the school year, and there is no evidence that any part of the abuse occurred as late as September of 1997.

■ Nevertheless, the State argues that, because W.A. said the abuse occurred in the summer, and technically speaking, summer does not end until the autumnal equinox in mid-September, the abuse could have extended into September of 1997. We believe this is a strained and unnatural construction of the victim's testimony. We conclude that W.A. was not referring to summer in the technical sense, but to summer as she knew it, i.e., the summer months when she was out of school. Additionally, because W.A. testified that the abuse occurred usually between noon and two o'clock p.m., when her parents would return home from work, if school was being held, she would have been at school, not at home, during these hours.

In this state of the evidence, the statute mandates that the trial court apply the prior statute. The trial court thus erred by ordering that Yebio's sentences run consecutively. We will reform the judgment to provide that the sentences run concurrently.

Yebio next contends the trial court erred by permitting Lanford to testify as an outcry witness about the victim's statements to her because she was not the first adult to whom the victim made an outcry.

■ The outcry statute provides that the first person eighteen years old or older, other than the defendant, to whom the child victim makes a statement about the offense may testify about the statement, notwithstanding the hearsay rule, if: (1) at least fourteen days before trial, the party intending to offer the statement notifies the other party of its intent, provides the other party the name of the witness through whom it intends to offer the statement, and provides the other party with a written summary of the statement; (2) the trial court finds, after a hearing, that the statement is reliable based on the time, content, and circumstances of the statement; and (3) the child testifies or is available to testify. TEX.CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp.2002); *Smith v. State,* 40 S.W.3d 147, 149 (Tex.App.-Texarkana 2001, no pet.). The requirements of Article 38.072 are mandatory. *Long v. State,* 800 S.W.2d 545, 547 (Tex.Crim.App. 1990); *see also Dorado v. State,* 843 S.W.2d 37, 38 (Tex.Crim.App.1992).

■ The State gave notice that Hillary Probert would be its Article 38.072 outcry witness. At trial, however, the State did not offer Probert as its outcry witness, but instead introduced outcry evidence through Lanford. The State takes the position that defense counsel did not object on the basis that the notice was incorrect, so the issue of lack of proper notice was waived. Counsel's objection to Lanford's testimony was as follows:

> [Defense Counsel]: ... I would object if she is not the first one it was relayed to. She just testified it was, I believe, Ms. Probert.
>
> The Court: Overruled at this point.
>
> [The State]: Besides saying that she had been sexually abused, did [W.A.]

provide Ms. Probert any details about what exactly had happened?

[Defense Counsel]: Your Honor, this is not something that this witness would know. I object to the question.

The Court: Sustained as calling for hearsay.

[The State]: Based on what you had heard, did you have a conversation with [W.A.] about . . .

[Defense Counsel]: Again—I withdraw it.

[The State]: Did you have a conversation with [W.A.] about her disclosure?

. . .

[The State]: Did you talk with [W.A.] about what she had told Mrs. Probert?

Witness: Yes

[Defense Counsel]: Your Honor, again the answer did not show her personal knowledge as to what the child told Ms. Probert.

The Court: Overruled.

Lanford then testified about her meeting with W.A., but she did not go into detail about the statements made by W.A. during the meeting. The following then transpired:

[The State]: What did she tell you about that?

[Defense Counsel]: Your Honor, I would object. This is not the first person that the facts were relayed to.

The Court: Overruled.

Lanford then recounted that the victim then said Yebio kissed her. The State then asked:

[The State]: Did she also talk about him touching her?

A. Yes.

Q. What did she say about that?

[Defense Counsel]: Your Honor, again I would object to this answer,

this question. It goes to getting information from someone that is not the first person that anything was relayed to.

The Court: Overruled.

Lanford then recounted in graphic detail the types of touching that the victim had described to her.

When offered for the truth of the matters asserted, the so-called "outcry testimony" is hearsay, so it is inadmissible unless it is made admissible by a prescribed exception to the hearsay rule. *See* Tex.R. Evid. 801, 802. Tex.Code Crim. Proc. Ann. art. 38.072 creates an exception to the hearsay rule when its requirements are met.

The State did not comply with the requirement that its notice to Yebio identify the witness through whom it intended to offer the statement. Tex.Code Crim. Proc. Ann. art. 38.072, § 2(b)(1)(B). The testimony was therefore objectionable. *Long v. State*, 800 S.W.2d at 547. Yebio objected, but not on that ground.

■ An objection is sufficient to preserve error for appellate review if it communicates to the trial court what the objecting party wants and why the objecting party thinks himself entitled to relief, and if it does so in a manner clear enough for the trial court to understand the objection at a time when it is in a position to correct the error. *See Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex.Crim.App.1992).

■ A defendant's hearsay objection is sufficient to preserve error for any failure to comply with the mandatory requirements of Article 38.072 because, after a hearsay objection is made, the state has the burden to show it has complied with all the requirements listed in Article 38.072. *Long v. State*, 800 S.W.2d at 547–48; *Gabriel v. State*, 973 S.W.2d 715, 719 (Tex.

App.-Waco 1998, no pet.). In this case, Yebio did not make a hearsay objection, but instead complained only that the person brought forward by the State was not the first person to whom the outcry was made. The question of notice or of the sufficiency of the State's notice to identify the outcry witness was not raised as a contemporaneous objection, and it is not raised as an issue on appeal. That issue is therefore not before us for review.

■ The issue raised by Yebio on appeal is whether the State proved that Lanford was the first person the victim told about the offenses. The testimony elicited at trial shows that the victim first told Probert, a teacher and a volunteer with the "WHO" program (We Help Ourselves), that she had been sexually abused by Yebio. Probert testified that, after W.A. made that disclosure, she went to tell Lanford, the counselor, and then she, Lanford, and W.A. all went to Lanford's office. Probert testified that, at their first meeting with W.A., they did not get into intimate details and did not go into specifics, and that their intent was to let W.A. know that they believed her and that she had done the right thing in coming forward. Lanford, however, testified that, when they brought W.A. to her office, W.A. told her and Probert about Yebio kissing her and that he would "come into her room and sit on her bed, take his underwear off, take her underwear off, put her on his lap and rub her on his lap."

■ Article 38.072 allows the first person to whom the child described the offense in some discernible manner to testify about the statements the child made. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim.App.1990); *Thomas v. State*, 1 S.W.3d 138, 141 (Tex.App.-Texarkana 1999, pet. ref'd). Although a person is the first person the child told about sexual abuse, that person is not a proper outcry witness if the child's statement to that person was only a general allusion to abuse. *Garcia v. State*, 792 S.W.2d at 91; *Broderick v. State*, 35 S.W.3d 67, 79 n. 1 (Tex.App.-Texarkana 2000, pet. ref'd).

In this case, Probert testified that W.A.'s initial statement to her was nothing more than a general statement claiming abuse. When W.A. made statements describing the sexual abuse in more detail, both Probert and Lanford were present. In those circumstances, the State could choose either of them as its outcry witness. We conclude that the trial court properly allowed Lanford to testify as an outcry witness because she was present when the first statement by the child was made that described the sexual abuse in some discernible manner.

The judgment is reformed to reflect that the sentences in both cases shall be served concurrently. As reformed, the judgment is affirmed.