Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



DAVID HARRIS,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-04-00143-CR

Appeal from the

346th District Court

of El Paso County, Texas

(TC# 20020D05384)




O P I N I O N

           This is an appeal from a jury conviction for the offense of aggravated sexual 
assault of a child. The court assessed punishment at twenty-six years’ imprisonment in the
Institutional Division of the Texas Department of Criminal Justice. We affirm the judgment
of the trial court.
I. SUMMARY OF THE EVIDENCE
           Margaret Anderson testified at trial that she was the mother-in-law of David Harris
(Appellant). On April 29, 2002 at between 5:30 and 6:30 a.m., she was getting her
granddaughter ready for day care when the then four-year-old girl stated that, “My David
licked my bissy.” Anderson testified that “bissy” is a German word for vagina. Anderson
and her husband had custody of the child. She had visited her mother and Appellant the day
before. Anderson was shocked to hear the statement and she asked the child to repeat it. The
complainant again stated what she had said previously verbatim. Anderson called to her
husband who was shaving.
           Alton Anderson testified that he was a Sergeant Major in the United States Army. He
is Appellant’s father-in-law. Appellant lived with his stepdaughter in a home in El Paso
County, Texas. He and his wife had custody of the complainant. When he heard the
accusation made by the complainant, he called Appellant on the telephone and had the child
repeat the accusation over the telephone. Appellant responded that the incident did not occur
and that he was going to pick up the child and he and his wife would look after her for that
day. Alton Anderson refused to allow that and he took the complainant to the day-care
facility. Later, he was reached by someone at the day-care facility who informed him that
given the accusations made by the complainant, they were required to notify Child Protective
Services. Alton Anderson responded, “Please do.”
           The complainant testified that she was six at the time of trial. She related that, “[a]
long, long time ago I was at David’s house and I was--I saw my mom’s dog. Her name was
Princess and she had babies. Then, when I told my David to hold her, then he said--he told
me to lay down and he started doing something wrong he should not do.” The complainant
then related, “[h]e licked me on the private part.”
           The complainant was asked by the prosecutor to demonstrate with a boy doll and a girl
doll what Appellant had done to her. After she had done so, the prosecutor asked the record
to reflect that the complainant, “has pulled the panties of the female doll down, pulled out
the tongue of the male doll and placed the tongue of the male doll on the vagina of the female
doll.” After using the dolls, the complainant stated that her mother was in the room when
the incident occurred and she saw her mother spank Appellant. The complainant stated that
she had seen the dolls before in the prosecutor’s office. When queried about the office, she
stated it was the office of the prosecutor, “the one who told me about David did wrong.” The
complainant was asked if she had told her grandmother that Appellant had told her that she
could have a kitty if he could lick her, she replied, “You know Princess’s dog? She had one
of those baby ones, so I wanted to hold one.”
           During cross-examination, the following exchange occurred:
DEFENSE:Do you remember anything else that happened that day?
 
WITNESS:I don’t know anything about what David did.
 
DEFENSE:You don’t know anything about what David did.
 
WITNESS:Not anymore.
 
DEFENSE:Have you just forgotten?
 
WITNESS:Uh-huh, because I wasn’t at my mom’s house.
 
DEFENSE:So do you remember what happened or not?
 
WITNESS:Yes. I remember what happened, what David did; something wrong.

. . .
DEFENSE:Do you remember where it happened?
 
WITNESS:At my mom’s house.
 
DEFENSE:Was it inside the house?
 
WITNESS:No, it was somewhere else.
 
DEFENSE:It was--was it outside of the house?
 
WITNESS:But there was something right next to the house. It was a--it’s
a different house.
 
DEFENSE:There’s two houses?
 
WITNESS:Uh-huh.
 
DEFENSE:Was it in that house?
 
WITNESS:He took me there and--well, not me, David--my mommy just
showed me Princess’s babies, and I wanted to pet them.
           When asked if anyone had helped her remember what had occurred, she responded
that her grandparents and mother had helped her remember; then, the following dialogue
resulted:
DEFENSE:So when you said that David licked you, it was inside, right? 
Are you saying it was inside?
 
WITNESS:No, it was a different house.
 
DEFENSE:It was inside that house or was it outside the house?
 
WITNESS:A different house, right next to my mommy’s house. It’s a
different house.
 
DEFENSE:Do you know what “inside” and “outside” means?
 
WITNESS:Yeah, but that’s where Princess sleeps at with her babies, and I
always see them drinking milk. 

           When asked to identify the Appellant in the courtroom, she stated he was not present
notwithstanding his presence in the courtroom.
           Christine Harris, the complainant’s mother, testified that she thought Appellant was
innocent. During the child’s visit prior to her outcry the next day, the child was never out of
her sight. She stated that the child never went to the detached garage where Appellant was
working on a van. Harris stated that the complainant had been in the detached garage on
previous occasions while playing with the kittens that were in the garage. The witness
related that the child had played with the kittens in the yard on April 28, 2002; she had also
played with the dogs. She stated that she did not spank Appellant. When she and Appellant
returned the complainant to the Anderson’s house, the child was not upset and had asked
Appellant to tuck her in.
           Harris stated that her parents had temporary custody of the complainant. They had
filed a lawsuit to obtain custody of the child. This lawsuit was pending at the time of the
incident. The witness related that Appellant left El Paso several days after the incident. He
went to Kansas where his brother lived. He was arrested in November of 2002. Harris did
not know where he was during his absence from El Paso.
           Mario Chaides, a Crimes Against Children detective with the El Paso Police
Department, testified that he witnessed an interview with the complainant at the Children’s
Advocacy Center. This formal interview was conducted with Lucy Herrera, a Child
Protective Services agent. The complainant refused to talk and she did not make an outcry
of sexual abuse. She did state that Appellant had licked her and gave her a kitten. Detective
Chaides testified that on some instances, a juvenile complainant is interviewed too many
times. In this case, the complainant had spoken to six or seven individuals and this has the
effect, “after you’ve told a traumatic situation too many times, you just don’t want to say it
anymore.” The witness then interviewed other witnesses in the case and the child’s
accusations were consistent with each witness. A medical exam was conducted to detect
sexual abuse. It was negative. Detective Chaides related that such a result is not unusual
when the allegation is oral contact with the vagina.
II. DISCUSSION
           In Issue No. One, Appellant contends that the evidence was factually insufficient to
support the conviction. Specifically, Appellant asserts that the lack of the credibility of the
complainant, the lack of physical evidence, and the bias of the outcry witness and her
husband are factors which mitigate against finding the evidence factually sufficient.
           In conducting a factual sufficiency review, we view the evidence in a neutral light and
set aside the fact finder’s verdict only if (1) the evidence supporting the verdict, when
considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt
standard could not have been met. Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim.
App. 2004). However, our factual sufficiency review must be appropriately deferential so
as to avoid substituting our judgment for that of the fact finder. Clewis v. State, 922 S.W.2d
126, 133 (Tex. Crim. App. 1996). Accordingly, we are authorized to set aside the jury’s
finding of fact only in instances where it is manifestly unjust, shocks the conscience, or
clearly demonstrates bias. Id. at 135. If the evidence is factually insufficient, we remand to
the trial court for a new trial. Id. at 133-35.
           To commit the offense of aggravated sexual abuse of a child, an individual must have
intentionally or knowingly penetrated the sexual organ of a child by any means. Tex. Penal
Code Ann. § 22.021(a)(1)(B)(i) (Vernon Supp. 2004-05). The evidence in the instant case
showed that the four-year-old complainant was at the Appellant’s house when the incident
occurred. There were kittens and puppies in the garage and Appellant was working in the
garage. The child was playing with the kittens. The child testified, in part by using the dolls,
that Appellant pulled down her underwear and licked her vagina. She told her grandmother
about this conduct the next day, and she repeated the statement to her grandfather and the
people at the day-care center. Further, Appellant left the area soon after the allegation came
to light.
           The evidence contrary to the child’s rendition of events was provided by the child’s
mother (Appellant’s wife) that the complainant never left her sight during the day, the child
did not appear upset, and she did not mention the incident to her mother. Furthermore, the
medical results of the child’s examination were negative for sexual abuse.
           Further, Appellant contends that the complainant’s testimony was not credible because
the child’s testimony was inconsistent. Specifically, Appellant asserts that her testimony was
inconsistent regarding whether she was playing with kittens or puppies when the incident
occurred, whether the incident occurred at her mother’s house or some house next door, and
the location of her mother when the incident occurred. Furthermore, the child was unable
to identify Appellant in the courtroom.



           Concerning the testimony of the child’s mother, the jury was free to believe or
disbelieve her testimony. Also, the jury could well have believed Detective Chaides’s
testimony that with oral penetration, there is seldom a positive medical result.
           Regarding the alleged inconsistencies, we note that the evidence indicates that there
were both kittens and puppies at the house and the child could have been referring to the
detached garage as another house next door. Furthermore, contradictions in a child witness’s
testimony do not indicate the evidence is insufficient in and of itself; rather, such
contradictions go to the weight of the testimony and the credibility to be given to the
testimony. Weisinger v. State, 775 S.W.2d 424, 429 (Tex. App.--Houston [14th Dist.] 1989,
pet. ref’d).
           Appellant also asserts that the testimony of Margaret and Alton Anderson was biased
and not credible due to the fact they had filed a lawsuit to obtain custody of the complainant. 
However, they both testified consistently with regard to what the child stated to them and
Appellant does not point to any other indicator that they were biased. We find that the
evidence was factually sufficient to support the conviction. Issue No. One is overruled.
           In Issue No. Two, Appellant contends that the court erred in admitting the outcry
statement given to Margaret Anderson because the State did not comply with the notice
provision of Article 38.072 of the Texas Code of Criminal Procedure which governs outcry
statements. Article 38.072 provides that notice of a child’s outcry statement must be given
to the opposing party on or before the fourteenth day before the date the proceeding begins. 
Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1) (Vernon 2005).
           The State maintains that Appellant has failed to preserve error regarding this
contention. We agree. Appellant did not object to the introduction of the outcry statement
on the ground he had not received the requisite notice. Failure to do so results in a waiver
of error on appeal. Yebio v. State, 87 S.W.3d 193, 197-98 (Tex. App.--Texarkana 2002, pet.
ref’d). Accordingly, we overrule Issue No. Two.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
                                                                  RICHARD BARAJAS, Chief Justice

August 31, 2005

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)