

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1099-13

**RONALD ANTONIO BONILLA, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE TENTH COURT OF APPEALS
## BRAZOS COUNTY

**PRICE, J., filed a dissenting opinion in which WOMACK, J., joined.**

## DISSENTING OPINION

The appellant was convicted of four counts of indecency with a child by sexual contact committed against his two young nephews, MB and DB. The jury assessed his punishment for each offense at fourteen years in the penitentiary. The trial court ordered the two sentences relating to the offenses against MB to run concurrently and the two sentences relating to the offenses against DB to also run concurrently, but it ordered the two sentences relating to DB to run consecutively to the two sentences relating to MB. However, the

indictment alleged that the appellant committed the offenses against DB "on or about" a date in 1995, which was before the effective date of the statutory amendment that permitted such stacking. The court of appeals affirmed the trial court's stacking order nevertheless, holding that, because there was some evidence from which the jury could have found that the appellant committed his offenses against DB *after* the amendment to the statute, the stacking order was permissible.[1] We granted the appellant's petition for discretionary review to examine this holding.

## I. PROCEDURAL POSTURE

In a single indictment, the appellant was charged with four discrete instances of indecency with a child, two of which were alleged to have been committed against MB and two allegedly committed against DB.[2] Counts I and II of the indictment alleged that the appellant committed indecency with a child against MB in two different, statutorily discrete ways on the same date; Count I alleged that, on or about January 1, 2002, the appellant

---

[1]  *Bonilla v. State*, No. 10-12-00064-CR, 2013 WL 3482127 (Tex. App.—Waco July 11, 2013) (mem. op., not designated for publication).

[2]  *See* TEX. PENAL CODE § 3.02(a) ("A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode."); *id*. § 3.01 ("In this chapter, 'criminal episode' means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person . . ., under the following circumstances: . . . (2) the offenses are the repeated commission of the same or similar offenses."); TEX. CODE CRIM. PROC. art. 21.24(a) ("Two or more offenses may be joined in a single indictment . . ., with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code.").

touched MB's genitals, while Count II alleged that, on or about the same date, the appellant caused MB to touch the appellant's genitals.[3] Counts III and IV of the indictment alleged that the appellant also committed indecency with a child against DB in two different, statutorily discrete ways on the same date; Count III alleged that, on or about January 1, 1995, the appellant touched DB's genitals, while Count IV alleged that, on or about the same date, the appellant caused DB to touch the appellant's genitals. In separate verdict forms, the jury convicted the appellant of all four offenses and, at the conclusion of the punishment phase of trial, assessed a fourteen-year sentence for each offense. The trial court ordered the two sentences relating to MB to run concurrently with one another and the two sentences relating to DB to also run concurrently. But it stacked the two concurrent sentences relating to DB on top of the two concurrent sentences relating to MB, over the appellant's objection.[4]

---

[3]

*See* TEX. PENAL CODE § 21.11(a)(1) ("A person commits an offense if, with a child younger than 17 years of age, . . . the person . . . engages in sexual contact with the child or causes the child to engage in sexual contact[.]"); *id*. § 21.11(c) ("In this section, 'sexual contact' means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of . . . any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with . . . any part of the genitals of a person.").

[4]

After the jury returned its punishment verdicts, the prosecutor expressly requested that the trial court stack the sentences corresponding to Counts III and IV of the indictment upon the sentences corresponding to Counts I and II. The appellant asked the trial court to deny this request, but stated no particular legal basis to oppose it. The State now argues that the appellant's general objection failed to preserve his argument on appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A) (to preserve particular complaint for appeal, appealing party's timely objection must "state[] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint"). The State made no such procedural default argument to the court of appeals, however, and that court seems to have rejected the appellant's argument on the merits, perhaps in light

On appeal, the appellant challenged the trial court's authority to enter the stacking order. In 1997, the Legislature amended Section 3.03(b) of the Penal Code to grant trial courts the discretion to stack sentences pertaining to convictions for indecency with a child.[5] But, as the appellant pointed out in his appellate brief, the amendment was prospective, meaning that it cannot be construed to authorize stacking that would utilize a sentence for an offense occurring before September 1, 1997, the effective date of the amendment.[6] The appellant argued that, because the indictment alleged that the offenses against DB occurred on January 1, 1995, and because the written judgments corresponding to Counts III and IV of the indictment reflect that the date of the respective offenses was "1/1/1995" and that "[t]he age of the victim at the time of the offense[s] was seven (7) years" (which would have been in the years 1995 and 1996), the sentences for the offenses against DB could not be stacked upon the sentences for the offenses against MB.

---

of this Court's explicit holding in *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992), that invalid cumulation orders are not subject to ordinary rules of procedural default such as the contemporaneous objection rule. Issues of procedural default are systemic, meaning that an appellate court may not reverse a conviction without addressing any such issue. *Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012). In light of our holding in *LaPorte*, however, the Court need not remand this cause to the court of appeals to address the State's procedural default argument. *See Gilley v. State*, 418 S.W.3d 114, 119-20 (Tex. Crim. App. 2014) (although this Court typically addresses only "decisions" of the courts of appeals, when the proper disposition of an outstanding issue is clear, we may resolve it on discretionary review, though not addressed below, in the interest of judicial economy).

[5]

    *See* TEX. PENAL CODE § 3.03(b), as amended by Acts 1997, 75th Leg., ch. 667, § 2, p. 2251, eff. Sept. 1, 1997.

[6]

    Acts 1997, 75th Leg., ch. 667, § 7, pp. 2252-53, eff. Sept. 1, 1997.

The court of appeals disagreed.[7]  Noting that (1) the indictment alleged that the offenses against DB were committed "on or about" January 1, 1995, (2) there was some evidence in the record from which the jury might have found that both offenses actually occurred after September 1, 1997, and that (3) the appellant had failed to "ask the State to elect as to which act, out of multiple acts, it would rely upon to secure a conviction[,]" the court of appeals concluded that "the trial court did not err in stacking the sentences[,]" and affirmed.[8]  We granted the appellant's petition for discretionary review in order to address the appellant's contention that the court of appeals erred to hold that, so long as there was evidence in the record that would support a jury finding that the offenses committed against DB occurred after September 1, 1997, the trial court had discretion under the amended statute to stack those sentences upon the sentences that were imposed for the offenses committed against MB.

## II.  THE PERTINENT FACTS

I begin by canvassing the evidence that was adduced at trial with a view to what it reveals with respect to when the appellant touched DB's genitals (Count III) and when the appellant caused DB to touch the appellant's genitals (Count IV).  DB's first memory of sexual abuse by the appellant was of an incident that occurred at some point when DB was

---

[7]

*Bonilla*, 2013 WL 3482127, at *4.

[8]

*Id*.

between the ages of six and eight, while DB's family was living in a house in Bryan. This would coincide with the years 1994 through 1996. On this particular occasion, the appellant "rubbed [DB's] genitals for a couple of seconds." DB was wearing clothing at the time, and he could not remember an instance in which the appellant went beyond "on top of the clothing touching" during the years that the family lived in the Bryan house. Because "sexual contact" for purposes of indecency with a child includes touching through the clothing, this incident could support a guilty verdict under Count III of the indictment.[9]

In December of 1996, DB's family moved to a new house in College Station. DB remembered an incident at the new house in which the appellant pulled a distinctive pair of red shorts off of DB and masturbated him. DB testified that this recurred on more than one occasion—in fact, there were "many times" in which the appellant "would either rub my genitals over my clothes or he would take my clothes off and masturbate me." Any one of these incidents, all apparently occurring prior to September of 1997, could also support the appellant's conviction under Count III of the indictment.

DB's father owned a carpet cleaning company. When DB was seven or eight years

---

[9] Section 21.11 of the Penal Code, the indecency-with-a-child statute, was amended in 2001 to include a definition of sexual contact that expressly includes "touching through clothing," but that amendment was prospective only. *See* Acts 2001, 77th Leg., ch. 739, §§ 2 & 3, p. 1463, eff. Sept. 1, 2001. Nevertheless, this amendment served only to codify the pre-existing case law. *See Resnick v. State*, 574 S.W.2d 558, 559-60 (Tex. Crim. App. 1978) (statutory definition of "sexual contact" does not require "flesh-to-flesh contact"); *Deason v. State*, 786 S.W.2d 711, 715-16 (Tex. Crim. App. 1990) (opinion on reh'g) (same).

old, corresponding to the years 1995 and 1996, he sometimes went to job sites with the appellant, who cleaned carpets in apartment complexes for DB's father. On these job sites, "it would get to the point where [the appellant] would be masturbating [DB] and then he would expose himself to [DB] and he would put [DB's] hand around [the appellant's] penis and then he would put his hand around [DB's] hand and make [DB's] hand . . . masturbate him." These additional pre-1997 incidents would support the appellant's convictions under both Count III and Count IV of the indictment.

The abuse persisted well after September of 1997, moreover, by which time DB was almost ten years old:

> And, you know, as I got a little older maybe 10 or 11 he would masturbate me until I ejaculated. And I would not want to masturbate him. So what he would do is he would just finish himself.
>
> Q  So we were talking about starting at 7. Now, you're talking when we're getting up into 10 or 11?
>
> A  Yes, sir.

When, starting at about the age of 12, DB began to resist, the appellant would "try to hug [DB] and bring [him] back in."

> Q  Is this all still continuing? I mean, I know it's hard to talk specifically about having someone touch you like that; but is that continuing throughout this period?
>
> A  Yes, sir.
>
> Q How many times do you think -- if you can even give me some idea, how many times he touched your penis?

A  Countless.

Q  How many times do you think he had you touch his penis?

A  Countless.

By the time DB was 12 to 13 years old, the appellant "would still rub [his] genitals over [his] clothes and stuff or try to hug [him] and, like, kiss on [him].  He would still take [DB's] hand and put it on his genitals but [DB] would fight him off."  Thus, the evidence would also support convictions for both Count III and Count IV of the indictment on the basis of any number of undifferentiated incidents occurring after the effective date of the 1997 amendment to Section 3.03(b) of the Penal Code.[10]

The appellant did not request that the State, at the close of its case-in-chief, elect which particular incident of abuse it intended to rely on to prove either Count III or Count IV of the indictment—perhaps in order to take advantage of the jeopardy bar to later prosecution for any of those incidents in the absence of such an election.[11]  Nor did he seek a jury instruction that would have required the jury to reach a unanimous verdict with respect

---

[10]

All of these incidents occurred before the effective date of the Continuous Sexual Abuse of Young Child or Children statute.  TEX. PENAL CODE § 21.02.  *See* Acts 2007, 80th Leg., ch. 593, §§ 1.17 & 4.01, pp. 1127-28 & 1148, eff. Sept. 1, 2007.

[11]

*Ex parte Goodbread*, 967 S.W.2d 859, 860-61 (Tex. Crim. App. 1998);  *Dixon v. State*, 201 S.W.3d 731, 735 (Tex. Crim. App. 2006);  *Ex parte Pruitt*, 233 S.W.3d 338, 345 (Tex. Crim. App. 2007);  *Cosio v. State*, 353 S.W.3d 766, 775 (Tex. Crim. App. 2011).

to whatever particular incidents it might find to satisfy each count.[12]  The jury returned general verdicts, simply finding that the appellant was guilty of each of the four counts "as alleged in the indictment."

### III.  ANALYSIS

Both Count III and Count IV are supported by evidence of incidents that occurred before and after September 1, 1997, the effective date of the provision granting the trial court discretion to stack the sentences imposed for those counts on top of the sentences imposed for Count I and Count II.  Faulting the appellant for failing to force the State to elect which particular incidents it would rely on for conviction, the court of appeals held that the trial court's discretion to stack the sentences was triggered so long as there was "some evidence" in the record to show that the offenses against DB occurred after September 1, 1997.[13]  Thus, the court of appeals essentially imposed a burden on the appellant to make the record show that the jury relied upon incidents that pre-dated the effective date of the amendment, specifically by forcing the State to elect to proceed on a pre-indictment incident.  The court

---

[12]

*Francis v. State*, 36 S.W.3d 121 (Tex. Crim. App. 2000).  *See* George E. Dix & John M. Schmolesky, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 42:22, at 849-50 (3d ed. 2011) ("A charge making clear to the jury that it must agree on one of several acts or incidents as that constituting the offense, *Francis v. State* indicated, is necessary even if the State has not been required to elect.  * * *  If a defendant waits until formulation of the charge to obtain relief on the basis of facts that would have required election, the defendant may be entitled under *Francis* to no more than a jury charge in effect requiring the jury to elect.  The charge, then, would not limit the jury to any one of several acts or incidents that might constitute the crime.  It would, however, make clear that the jurors must unanimously agree on one of them as constituting the proved offense.").

[13]

*Bonilla*, 2013 WL 3482127, at *4.

of appeals did not attempt to explain why it is appropriate to place the burden on the appellant. Before considering that question, however, I first consider the appellant's argument with respect to the written judgment—an argument that the court of appeals's opinion failed to acknowledge, much less address.

## A. Article 42.01

Article 42.01 of the Code of Criminal Procedure governs what must be contained in a written judgment.[14] It declares that "[t]he sentence served shall be based on the information contained in the judgment."[15] Section 1(14) of Article 42.01 requires that the judgment reflect the date of the offense.[16] Section 1(27) requires "a statement of the age of the victim of the offense" if the offense is one for which sex-offender registration is required, as is the case with indecency with a child.[17] Accordingly, in the judgments corresponding to Counts III and IV of the indictment, the trial court listed the date of the offenses as "1/1/1995," and reported the age of DB at the time of the offense as "seven (7) years."[18] Because the

---

[14] TEX. CODE CRIM. PROC. art. 42.01.

[15] *Id*. § 1.

[16] *Id*. § 1(14).

[17] *Id*. § 1(27); TEX. CODE CRIM. PROC. arts. 62.001(5)(A), 62.051(a).

[18] The evidence at trial showed that DB was born on January 19, 1988. Strictly speaking, then, he would not yet have turned seven years old by January 1, 1995, the date the judgment reflects that the offense occurred.

evidence at trial shows that DB was already nine years old as of September 1, 1997, the appellant now argues that his sentences for indecency with a child against DB cannot be made to run consecutively to his sentences for indecency with a child against MB.

But Article 42.01 also requires the judgment to reflect whether "the defendant's sentence is to run cumulatively or concurrently with another sentence or sentences."[19] The judgments corresponding to Counts III and IV in this case duly reflect that the sentences for those two counts "shall run consecutively" to the sentences imposed for Counts I and II, in keeping with the trial court's pronouncement from the bench at the conclusion of the punishment phase. The appellant does not explain why this notation in the judgment should not also constitute "information contained in the judgment" upon which "[t]he sentence served shall be based[.]" Should we presume that the trial court simply erred in cumulating the sentences because to do so was inconsistent with its judgment recitation of the date of the offense and the age of the victim at that time? Or should we instead presume that, because the judgment recites that the trial court ordered the sentences to run cumulatively, the trial court actually (if implicitly) determined that the offenses occurred after September 1, 1997, and simply made a mistake in recording the date of the offense and age of the victim? The appellant offers no satisfactory solution to this quandary.

In any event, we should be hesitant to involve the trial court in the sort of fact finding

---

[19] TEX. CODE CRIM. PROC. art. 42.01 § 1(19).

function that the appellant's argument implicitly assumes to be appropriate in this case. At least in the context of a jury trial, the question is not what the *trial court* believes with respect to whether the incidents for which the appellant was convicted under Counts III and IV of the indictment occurred before or after September 1, 1997. Rather, the relevant fact question is one of procedural history: what did the institutional fact-finder—here, the appellant's jury—find were the particular incidents it would rely upon to convict?[20] The problem, of course, is that, without an election by the State, and given the statutory requirement of a general verdict,[21] the appellant's jury was never called upon to indicate which specific incidents—whether occurring before September 1, 1997, or after—it relied upon to convict. Because the record is utterly unrevealing with regard to that question, the trial court had no factual basis upon which to determine which incidents the jury relied upon. Nor do the notations reflected in the written judgment purport to reflect the trial court's finding with

---

[20]

We have held that the trial court's decision whether to exercise its discretion to cumulate sentences does not implicate the Sixth Amendment right to a jury trial precisely because it does not typically "turn on any discrete or particular findings of fact on the judge's part." *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006). This is not to say that the trial court may never be called upon to make a predicate fact-finding with respect to issues of cumulation. *See, e.g.*, *Miller v. State*, 33 S.W.3d 257, 261 (Tex. Crim. App. 2000) (trial court's authority to cumulate sentences resulting from convictions following non-joined or -consolidated trials is contingent upon a finding that "the record contains some evidence" linking the defendant to the sentence from the prior conviction). But the fact question involved here—What particular incidents did *the jury* rely upon to convict the appellant under Counts III and IV of the indictment?—is not one that the trial court could definitively answer in the face of a silent record.

[21]

*See* TEX. CODE CRIM. PROC. art. 37.07 § 1(a) ("The verdict in every criminal action must be general.").

respect to what incidents the *jury* relied upon to convict. For this reason, I reject the appellant's tacit assumption that it is appropriate to defer to any purported fact-finding on the trial court's part that may be reflected in the written judgment.

## B. The Burden of Production

How, then, do we go about determining what incidents the jury relied upon in the face of a silent record? In the absence of controlling rules or legislation,[22] courts typically decide which party should prevail on a particular issue in the face of a record that is silent with respect to some determinative fact by assigning a burden of production. Here, the issue is whether the trial court is authorized to stack the sentences pertaining to DB upon those pertaining to MB, and the determinative fact, about which the record is silent, is exactly which incidents (pre- or post-amendment) the jury relied upon to find that the appellant committed the offenses against DB. In the context of a trial court's authority to cumulate

---

[22] To cite but one example of a statutory assignment of a burden of production, take Section 2.03(c) of the Penal Code. TEX. PENAL CODE § 2.03(c) ("The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense."). In *Krajcovic v. State*, 393 S.W.3d 282 (Tex. Crim. App. 2013), the issue was whether the appellant was entitled to the benefit of a jury instruction under a recent amendment to the statute governing self defense. The problem was that the Legislature made the amendment prospective only, and it was unclear from the evidence exactly when the homicide occurred—whether before or after the effective date of the legislative amendment. *See Krajcovic v. State*, 351 S.W.3d 523, 529 & n.10 (Tex. App.—Fort Worth 2011) (legislative amendment implementing the so-called "castle doctrine" provided that an offense committed before the effective date is to be governed by the former law). We held that the appellant was not entitled to the instruction under the new law because "there was no affirmative evidence that the offense was committed on or after" the amendment's effective date. *Krajcovic*, 393 S.W.3d at 287. That is to say, in the absence of evidence "establishing a precise temporal point that definitively determines which version of the law applies[,]" the appellant failed to satisfy his burden of production under Section 2.03(c) to show he was entitled to an instruction under the amendment to the self-defense statute. *Id*. at 289 (Price, J., concurring).

sentences, this Court has heretofore placed the burden of establishing determinative facts upon the State—which is, after all, the party that stands to benefit from any stacking order.[23] For example, in construing Article 42.08(a) of the Code of Criminal Procedure,[24] the statute that authorizes cumulation of sentences for non-joined and non-consolidated offenses, we have held that a trial court may not stack a new sentence on top of another sentence from an earlier proceeding in the absence of evidence linking the defendant to the conviction for which the earlier sentence was imposed.[25]   Thus, we essentially allocated the burden of production to the State.

Nevertheless, following the lead of several other courts of appeals cases,[26] the court

---

[23]

*Cf. Dansby v. State*, 398 S.W.3d 233, 243 n.17 (Tex. Crim. App. 2013) ("What we hold today is that, as beneficiary of the appellate rule that, upon proof of the violation of any one condition of probation, an appellate court may affirm a revocation order, the State bears the burden of producing a record that demonstrates an absence of constitutional infirmity in the one condition upon which it would rely.").

[24]

TEX. CODE CRIM. PROC. art. 42.08(a).

[25]

*See Miller*, 33 S.W.3d at 261 ("Only when the record contains some evidence that links the defendant to the prior convictions is the trial judge's authority under [Article] 42.08(a) triggered.  In other words, the record must support the trial judge's exercise of discretion.").

[26]

For the proposition that stacking was permissible so long as there was some evidence in the record that the offenses in Counts III and IV of the indictment occurred after September 1, 1997, the court of appeals cited *Hendrix v. State*, 150 S.W.3d 839, 853 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd), and *Owens v. State*, 96 S.W.3d 668, 671-72 (Tex. App.—Austin 2003, no pet.).  *See* George E. Dix & John M. Schmolesky, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 38:35, at 430-31 (3d ed. 2011) (describing the holding in *Owens*).  Both *Hendrix* and *Owens* cited an earlier opinion in *Yebio v. State*, 87 S.W.3d 193 (Tex. App.—Texarkana 2002, pet. ref'd).  In *Yebio*, the indictment alleged that the offense occurred "on or about" a date that fell after September 1, 1997. 87 S.W.3d at 195.  However, there was no evidence to show any incident of sexual abuse had actually

of appeals in this case held that the failure of the record to show the particular incident upon which the jury relied defeated the appellant's improper-cumulation claim, since he could have remedied the situation by requesting an election, but did not.[27] But the State could have remedied the situation just as readily as the appellant by choosing to elect *sua sponte*, and the court of appeals did not elaborate as to why it believed that it should be the appellant who shoulders this burden.[28] I next consider whether the court of appeals's assignment of the

---

occurred after that date, so the court of appeals reformed the judgment to delete the cumulation order. *Id*. at 196. Thus, *Yebio* is distinguishable from *Hendrix*, *Owen*, and the instant case, in each of which there was evidence to support a jury finding that the offense occurred both before and after the effective date of the 1997 amendment to Section 3.03(b) of the Penal Code.

[27]

The court of appeals reasoned:

Because the State used the phrase "on or about" in the indictment, it was free to prove that these offenses occurred on any date prior to the presentment of the indictment and within the statutory limitations period, which had not expired. Further, [the appellant] did not ask the State to elect as to which act, out of multiple acts, it would rely upon to secure a conviction. Thus, as long as there was some evidence that the offenses for counts three and four occurred after September 1, 1997, the trial court's order was not erroneous.

*Bonilla*, 2013 WL 3482127, at *4.

[28]

It is possible to understand the court of appeals's holding as essentially one of procedural default—that the appellant lost his right to complain of the potentially unlawful cumulation order through inaction, namely, his failure to insist at trial that the State elect the particular incidents of sexual abuse upon which it intended to rely in persuading the jury to convict the appellant of the offenses alleged in Counts III and IV of the indictment. Thus understood, the court of appeals's holding seems to be in tension with this Court's holding in *LaPorte*, 840 S.W.2d at 415, that "an improper cumulation order . . . may be raised at any time[,]" including for the first time on appeal.

The Court today holds that the appellant did indeed procedurally default his claim that the cumulation order was unauthorized. He did so by failing to demonstrate "that the jury could not have found him guilty of an offense that occurred after September 1, 1997." Majority Opinion at 2. The

burden of production is appropriate. I begin with a review of the four legal principles that intersect to inform our decision: (1) the law of joinder and severance; (2) the law governing the pleading of offense dates in a charging instrument; (3) the law requiring the State to elect

---

Court takes the position that the trial court's cumulation order was unauthorized, and therefore subject to challenge for the first time on appeal, only if the evidence could not have supported a jury finding that the offense occurred after September 1, 1997. *Id*. at 2, 11. In other words, *LaPorte*'s holding—that a claim that a cumulation order is unauthorized may be raised for the first time on appeal—applies only when a claimant is correct on the merits that the cumulation order is in fact unauthorized. I perceive three flaws in this argument. First of all, under this conception, it becomes necessary to resolve the merits of a claim in order to declare whether it is subject to procedural default. But just last year we demonstrated that it is *not* typically necessary to demonstrate that a claim is an assured winner in order to show that it "is not subject to ordinary principles of procedural default." *Davison v. State*, 405 S.W.3d 682, 690 (Tex. Crim. App. 2013). A reviewing court must resolve the merits of a waiver-only or systemic-requirement type of claim regardless of whether the claim ultimately proves meritorious. Second, the Court simply takes it for granted that the cumulation order in this case is unauthorized *only* if there is legally insufficient evidence from which the jury could have found that the offense occurred after September 1, 1997. Majority Opinion at 12 & n.30. But we characterized this as "an unsettled area of the law" in *Ex parte Bahena*, 195 S.W.3d 704, 707 (Tex. Crim. App. 2006), and we have had no occasion to settle that area of the law until today. Third, I believe that the proper question to ask is not whether the jury *could* have found that the offense occurred post-September 1, 1997, but whether the record shows that the jury, as institutional fact-finder, actually *did* find that the offense occurred after that date. *See* text, *ante*, at 12-13. When the record is silent with respect to this question, then the next question to ask is: Which party should be held accountable for that silence? It is the latter question that I believe the Court should address and resolve today.

Judge Alcala avoids the issue of procedural default by characterizing the appellant's claim as one that challenges the sufficiency of the evidence to support the trial court's cumulation order. Concurring Opinion at 2-5. In his brief on direct appeal, however, the appellant did not characterize his claim in this way, arguing instead that "[t]he law in effect at the time of the commission of counts 3 and 4 did not allow the court to 'stack' the counts." Appellant's Brief on Direct Appeal at 27. The appellant raised the issue as one of the trial court's authority to stack, *not* of evidentiary sufficiency. Nor did the court of appeals characterize the issue as one of sufficiency of the evidence in its unpublished opinion. Instead, the court of appeals held that the trial court had "discretion" to stack the sentences so long as there was "some evidence that the offenses for counts three and four occurred after September 1, 1997." *Bonilla*, 2013 WL 3482127, at *4. But the question before us, it seems to me, is not what some finder of fact *could* rationally have found on the facts presented, but what the jury, as the institutional fact finder in this case, actually *did* find—and how an appellate court should respond when the record simply does not disclose the jury's finding.

among discrete incidents it has proven at trial that independently support the offense it has alleged, and (4) the jeopardy consequences of the State's failure to elect.

## C.  The Law

**1.  Joinder and Severance.**  As originally enacted in the 1973 Penal Code, joinder of offenses in a single indictment for trial in the same criminal action and consolidation of disparate charging instruments for a single trial were limited to prosecutions for the repeated commission of the same *property* offense.[29]  This original scheme was broadened considerably by the Legislature in 1987, however, when the statutory definition of "criminal episode" was expanded to include, *inter alia*, "the repeated commission of the same or similar offenses[,]" whether property offenses or not.[30]  Thus, the State was permitted to pursue conviction for more than one offense in the same prosecution for any offenses committed during the same "criminal episode," as so statutorily defined.  Under Section 3.04 of the Penal Code, the defendant retained an absolute right to sever those offenses and force the State to embark on separate prosecutions.[31]  But the right to sever came at a price.  Upon severance, the trial court could, at its discretion, opt to cumulate sentences; whereas, the

---

[29]

*See* Acts 1973, 63rd Leg., ch. 399, § 1, p. 883, eff. Jan. 1, 1974 ("In this chapter, 'criminal episode' means the repeated commission of any one offense defined in Title 7 of this code (Offenses Against Property).").

[30]

Acts 1987, 70th Leg., ch. 387, § 1, p. 1900, eff. Sept. 1, 1987.

[31]

Acts 1973, 63rd Leg., ch. 399, § 1, p. 883, eff. Jan. 1, 1974.

defendant's "reward" for acceding to the State's joinder/consolidation of offenses in a single prosecution was that the trial court was required to run any resulting sentences concurrently.[32]

In 1995, however, the defendant's incentive to accede to joinder/consolidation was pared back. For the first time, the Legislature provided that, at least for one specific offense—intoxication manslaughter—the State would be allowed to join or consolidate offenses for prosecution and still request cumulation of sentences.[33] For the time being, the defendant could still insist on a severance, since Section 3.04 was not amended at this time, but either way, any resulting sentences could be cumulated. Two years later, in 1997, the Legislature expanded the list of offenses for which cumulation of sentences remained an option—even after joinder/consolidation—by adding sex offenses committed against children (including indecency with a child).[34] At the same time, the Legislature stripped the defendant of his absolute right to sever such joined/consolidated offenses.[35] Under current law, then, at least with respect to any indecency-with-a-child offense that the appellant may

---

[32] *Id*.; *see also* George E. Dix & John M. Schmolesky, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 38:33, at 426 (3d ed. 2011) ("In effect, concurrency of sentences is the defendant's 'reward' for not asserting his or her right to severance of the charges.").

[33] Acts 1995, 74th Leg., ch. 596, § 1, p. 3435, eff. Sept. 1, 1995.

[34] Acts 1997, 75th Leg., ch. 667, § 2, p. 2251, eff. Sept. 1, 1997.

[35] Acts 1997, 75th Leg., ch. 667, § 3, p. 2252, eff. Sept. 1, 1997.

have committed after the effective date of the 1997 amendment,[36] he has no unqualified right to insist on a severance to force separate trials, nor may he glean the automatic "reward" of concurrent sentences for acceding to the joinder.[37]

**2. "On or About" Pleading.** "It is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period."[38] The trial court instructed the appellant's jury accordingly. The indictment was filed on April 16, 2009, and there is currently no limitations period for the offense of indecency with a child.[39] Therefore, the appellant could be convicted for any instance of indecency with a child that conformed to the allegations in the various counts of the indictment and was committed prior to April 16, 2009, whether occurring before or after

---

[36] Acts 1997, 75th Leg., ch. 667, §§ 7 & 8, pp. 2252-53, eff. Sept. 1, 1997.

[37] Tex. Penal Code §§ 3.03(b), 3.04(c).

[38] *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997).

[39] By the time of the appellant's trial, Article 12.01 of the Code of Criminal Procedure had been amended to provide "no limitation" for prosecuting the offense of indecency with a child. Acts 2007, 80th Leg., ch. 593, § 1.03, p. 1120, eff. Sept. 1, 2007. Though this change to the statutory limitations provision came well after the appellant's offenses were committed, the change was expressly made to apply to any offense for which the prior limitations period had not already run. Acts 2007, 80th Leg., ch. 593, § 4.01(c), p. 1148, eff. Sept. 1, 2007. The trial court erroneously instructed the appellant's jury that the prior limitations period (ten years after the 18th birthday of the victims) would apply. Since that period had not run by the time of the appellant's trial with respect to either MB or DB, however, this error in the jury charge was inconsequential.

the effective date of the 1997 amendment to Section 3.03(b) of the Penal Code.

**3. The State's Election.** The rule that an "on or about" pleading does not bind the State to the actual date of the offense named in the indictment creates certain ambiguities of proof at trial.[40] Should the State happen to present evidence of conduct that would serve to prove the alleged offense and which occurred on more than one occasion, the defendant may not be able to distinguish the incident he is called upon to defend himself against from those other extraneous incidents that are admissible to serve some other valid evidentiary purpose.[41] Moreover, he cannot be assured that the jury has not convicted him for being a criminal generally, much less that it has attained unanimity with respect to any one incident.[42] On the other hand, it is important that the State should not be held to any one incident that would satisfy its "on or about" pleading until it has had an opportunity to gauge how its case has developed before the jury, so that it may choose which incident to rely upon for conviction according to its optimal proof.[43] For all of these reasons we have held that, at least upon the defendant's request, the State must ultimately elect which incident it intends

---

[40] *E.g.*, *Sledge*, 953 S.W.2d at 255; *Crawford v. State*, 696 S.W.2d 903, 905 (Tex. Crim. App. 1985).

[41] *O'Neal v State*, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988); *Phillips v. State*, 193 S.W.3d 904, 910 (Tex. Crim. App. 2006).

[42] *Phillips*, 193 S.W.3d at 910.

[43] *O'Neal*, 746 S.W.2d at 771 (quoting *Crosslin v. State*, 235 S.W. 905, 906 (Tex. Crim. App. 1921)).

to urge upon the jury in satisfaction of its "on or about" pleading; but we have also held that such an election is not required until the State rests its case in chief.[44] Moreover, whether or not the defendant has requested an election (at the time the State rests its case in chief, or at any other time), it remains incumbent upon the trial court to grant the defendant's later request to instruct the jury that it must be unanimous with respect to which incident of the charged offense the defendant was guilty of committing, even if the jury is uncertain of the particular date "on or about" which that incident occurred.[45]

**4. Double Jeopardy Consequences of the State's Failure to Elect.** The absence of an election by the State, we have held, invokes the constitutional protection against the defendant being twice put in jeopardy for the "same" offense, and the defendant may not be prosecuted a second time for any incident presented to the fact-finder at the first trial that could have served to support a conviction under the allegations pled in that initial prosecution.[46] By failing to elect, the State essentially forfeits its ability to obtain a later

---

[44] *O'Neal*, 746 S.W.2d at 772; *Phillips*, 193 S.W.3d at 912. The trial court may order the State to elect sooner, at its discretion, but must do so, upon request, at the time the State rests its case in chief; and "[f]ailure to do so constitutes error." *O'Neal*, *supra*.

[45] *See Cosio*, 353 S.W.3d at 776 ("[E]ven when the State is not required to elect, the trial judge must craft a charge that ensures that the jury's verdict will be unanimous based on the specific evidence presented in the case."). Indeed, even absent a request for a jury-unanimity instruction, the trial court's failure to submit one can sometimes result in reversible error under *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (opinion on reh'g). *Cosio*, *supra*, at 776-77.

[46] *See* note 11, *ante*.

conviction for any of those separate incidents and then, under Article 42.08 of the Code of Criminal Procedure, stack the sentence resulting from that later conviction on top of the sentence it obtained under the first prosecution. Moreover, when the record is unclear as to whether the State actually made an election, we have presumed that the State did *not* elect.[47] This effectively places the burden on the State to produce a record that avoids adverse jeopardy consequences rather than on the defendant to produce a record that positively establishes his entitlement to jeopardy protection. In the instant case, because the State was not required to, and the record shows it did not, elect a particular incident by which to prove either Count III or Count IV of the indictment, it may not later re-prosecute the appellant for any of the incidents presented at trial that could have supported his conviction for indecency with a child as alleged in Counts III and IV. By failing to compel the State to elect at the close of its case in chief, the appellant in this case is able to reap the "strategic" benefit—however deliberately—of this substantial double-jeopardy protection.[48] One might reasonably ask why he should not likewise reap the strategic benefit of the State's failure to

---

[47]
    *See Pruitt*, 233 S.W.3d at 347 ("If the State did make an election at the prior trial, it did not do so with the required specificity. If, as in this case, a reviewing court finds itself in the position of having to guess whether the State made an election, then it should decide that there was no election.").

[48]
    *See Cosio*, 353 S.W.3d at 775 ("A defendant's decision to elect is purely strategic and may be waived or forfeited."). What we should have said in *Cosio* was that a defendant's decision *whether to require the State to elect* is a strategic one. The State can always take that "strategic decision" away from the defendant by deciding, *sua sponte*, to elect. In that event, the defendant has no right to the jeopardy protection that inheres in the State's non-election. He can only compel the State to elect; he cannot prevent the State from electing.

elect as that failure impacts the availability of cumulation of sentences for joined offenses under the 1997 amendment to Section 3.03(b).

## D. Assigning the Burden for Cumulation Purposes

In a perfect jurisprudential world, the State would always elect which of multiple incidents it will rely upon to prove its "on or about" pleading. Election assures that the jury trial will operate optimally for both parties. For the defendant's part, (1) he knows the precise incident he must defend against; (2) he can ask for appropriate jury instructions limiting the jury's consideration of the extraneous incidents, insulating himself as best he can from character-conformity inferences; and (3) he can request a jury-unanimity instruction that focuses the jury's consideration on the particular incident that the State has elected. For these reasons, the defendant *can* compel the State to elect. For the State's part, election (1) assures that it can direct the jury's attention to the particular incident that best fulfills its burden of proof; and (2) it preserves the option of prosecuting the extraneous incidents later, perhaps to seek stacked sentences under Article 42.08(a). It is always within the State's power to *choose* to elect, regardless of whether the defendant seeks it.

For strategic reasons, either party may prefer to forgo election, resulting in a less-than-optimally functioning jury trial. The State may prefer not to elect because then, even given a jury-unanimity instruction, the jurors are free to pick whichever incident *they* can agree best

satisfies the State's burden of proof and still return a general verdict.[49] The defendant may be willing to give up the advantages of election in exchange for the double-jeopardy windfall he will enjoy. Because a defendant is entitled to a fair—but not necessarily a *perfect*—trial, and because his right to compel an election is subject to the ordinary rules of forfeiture, the criminal-justice system tolerates—but does not necessarily favor—such maneuvering by the parties.

Had the State exercised its unqualified right to elect in this case, then the trial court would have known for certain whether the appellant's sentences may properly be stacked under Section 3.03(b). Of course, the same could be said had the appellant exercised his unqualified right to *compel* the State to elect. Both parties opted to forgo election and reap their respective strategic objectives. Under these circumstances, which party should be held accountable for their mutual failure to insist upon an election that would have revealed for certain whether the sentences for the offenses committed against DB could be stacked upon the sentences for the offenses committed against MB? With respect to the cumulation issue, who should have to bear the brunt of this bilateral breakdown?

Our precedents suggest that the State should bear the burden. The State is the beneficiary of any stacking order. In the face of an uncertain record, we have insisted,

---

[49] *See Cosio*, 353 S.W.3d at 776 (even without an election by the State, it is still incumbent on the trial court "to submit a [jury] charge that does not allow for the possibility of a non-unanimous verdict"; in the event that such an instruction is submitted, while the jury does not have to say by its verdict which incident it relied upon to convict, it must still attain unanimity on a particular incident).

stacking is not authorized.[50] When the State does not elect—and even when we simply cannot tell from the record whether or not the State has elected—we have declared that the uncertainty thereby generated prevents the State from later prosecuting the defendant for any of the incidents upon which it has already relied.[51] And when the State cannot re-prosecute, it obviously cannot obtain a later conviction and sentence for stacking purposes under Article 42.08(a). It is hard to imagine why the same uncertainty in the record should not likewise operate to prevent the State from benefitting from a stacking order that is not clearly authorized for joined offenses by the 1997 amendment to Section 3.03(b) of the Penal Code.[52] Placing a burden on the appellant, by contrast, to compel the State to elect in order

---

[50] *Miller*, 33 S.W.3d at 261.

[51] *Pruitt*, 233 S.W.3d at 347.

[52] It is not altogether clear from our case law whether the so-called "rule of lenity" applies to the construction of provisions of the Texas Penal Code. *See Ex parte Forward*, 258 S.W.3d 151, 154 n.19 (Tex. Crim. App. 2008). Even if it does, "it provides the rule of decision only 'when both alternative choices [for how to construe a penal provision] are more-or-less equally reasonable.'" *Id*. (quoting *Cuellar v. State*, 70 S.W.3d 815, 823 n.8 (Tex. Crim. App. 2002) (Cochran, J., concurring)). If the rule of lenity did apply, it would likely counsel in favor of a holding that, in the absence of a specific showing in the record that the jury found the appellant guilty on the basis of incidents that occurred *after* the 1997 amendment to Section 3.03(b), the appellant's sentences should *not* be subject to cumulation. It is impossible to know the legislative intent with respect to this question, and it is at least as reasonable to conclude that the State should suffer the consequences of a silent record as that the appellant should. Under these circumstances, the rule of lenity would dictate, were it applicable, that we opt for the "less harsh interpretation" of the savings clause to the 1997 amendment of Section 3.03(b) of the Penal Code. *Cuellar*, 70 S.W.3d at 821, 823 n.8 (Cochran, J., concurring). Because I would reach the same conclusion without reference to the rule of lenity, and in deference to the observation in *Forward* that it may not apply to construction of the Penal Code, I omit it from my analysis in the text.

to *avoid* the consequences of an uncertain record would at least to some extent contradict our long-standing rule that an appellate complaint regarding the trial court's authority to enter a cumulation order in violation of Section 3.03 is not subject to procedural default.[53]

Moreover, the equities favor placing the burden on the State—at least in a case such as the present one, in which the indictment alleged offense dates for both Counts III and IV that preceded the effective date of the 1997 amendment to Section 3.03(b). Based upon the allegation of pre-amendment dates, the appellant presumably made a pre-trial choice whether to insist upon a severance of the charges against him under Section 3.04 (as he was entitled to do, pre-amendment) or, instead, to accede to the joinder of offenses and reap the "reward" (to which he was entitled, pre-amendment) of guaranteed concurring sentences. He cannot have known until the trial itself whether the State might, in reliance upon the "on or about" pleading rule, present evidence of incidents of indecency with a child that occurred after the effective date of the statutory amendment. And, indeed, had the State proven *only* post-amendment incidents, the appellant could not have enjoyed the reward of concurrent sentences after all, notwithstanding the presumption that he entertained pre-trial, based upon the dates actually alleged in the indictment. It seems manifestly unjust to permit the State to

---

[53] *LaPorte*, 840 S.W.2d at 415. In *Ex parte McJunkins*, 954 S.W.2d 39 (Tex. Crim. App. 1997), we subsequently held that a defendant can validly waive his right to concurrent sentences for consolidated charges under Chapter 3 of the Penal Code as part of a plea agreement. Even so, we continued to insist that *LaPorte* had been rightly decided to the extent that it allowed the appellant in that case to challenge, for the first time on appeal, the trial court's authority to enter a cumulation order in violation of Section 3.03. *Id*. at 41.

stand by while the appellant makes this presumptive strategic decision whether or not to seek the reward of concurrent sentences, and then insist, should he opt for joinder, that he nevertheless be deprived of that reward simply because at trial the State presented "some evidence" of incidents that would support the allegations that took place after the effective date of the amendment to Section 3.03(b).

I conclude that, for opting to allege pre-amendment dates in the indictment and then later choosing to take advantage of the "on or about" pleading rule, while at the same time pursuing the strategic benefits of failing to elect among pre-amendment and post-amendment incidents to prove its case, the State should be held accountable for the consequences of any resulting uncertainty whether the record supports the imposition of stacked sentences under Section 3.03(b) of the Penal Code. Accordingly, I would hold that the trial court lacked the authority to stack the sentences pertaining to the offenses committed against DB atop the sentences pertaining to the offenses committed against MB, and that the court of appeals erred to conclude otherwise.

## IV. CONCLUSION

Because the cumulation orders were not shown to be authorized under the 1997 amendment to Section 3.03(b), all of the appellant's sentences should have been made to run concurrently. Accordingly, I would reform each of the written judgments in this cause to

delete the cumulation orders.[54]  Because the Court does not, I respectfully dissent.


FILED:              November 19, 2014
PUBLISH

---

[54]

  *See Beedy v. State*, 250 S.W.3d 107, 113-14 (Tex Crim. App. 2008) (proper remedy for a cumulation order that is entered without lawful authority is simply to delete it from the judgment).